KNOWLES v CIVIL SERVICE COMMISSION

Docket No. 62195. Submitted November 9, 1982, at Lansing.—Decided March 29, 1983

David L. Knowles, a post community service officer with the Michigan State Police, filed a position action request with the Department of Civil Service seeking reclassification from the position of trooper to that of sergeant on the basis that his duties and responsibilities as a post community service officer made him eligible for reclassification as a sergeant. The department denied the request, finding that Knowles was properly classified as a trooper. Knowles filed an application for a classification redetermination with the department. A redetermination officer denied the reclassification request. Knowles then appealed that denial before a technical hearing officer, who also found Knowles to be ineligible for reclassification to sergeant. The Civil Service Commission affirmed the action of the technical hearing officer by denying Knowles' request for leave to appeal. Knowles then appealed to the Ingham Circuit Court. The court, James R. Giddings, J., ruled that the commission had incorrectly rated Knowles on one of four classification factors and concluded that Knowles was entitled to a higher rating, thereby making him eligible for reclassification as a sergeant. The Civil Service Commission and the Department of Civil Service appeal, contending that the trial court erred in reversing the commission's rating of Knowles. *Held:*

The findings of the hearing officer, which were affirmed by the commission, were supported by competent, material, and substantial evidence on the entire record and were not contrary to law. The findings should not have been set aside by the circuit court. The circuit court holding is reversed and the decision of the commission is reinstated.

Reversed.

Administrative Law — Civil Service Commission — Appeal.

An appellate court will affirm a holding of a Civil Service Com-

References for Points in Headnote
2 Am Jur 2d, Administrative Law § 614 *et seq.*
15A Am Jur 2d, Civil Service § 81.

mission hearing officer as long as the ruling is not contrary to law and is supported by competent, material, and substantial evidence on the entire record even if the court might have reached a different result had it been making the initial decision.

*Sinas, Dramis, Brake, Boughton, McIntyre & Reisig, P.C.* (by *Lawrence P. Schneider*), for petitioner.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Deborah Anne Devine,* Assistant Attorney General, State Affairs Division, for respondents.

Before: T. M. Burns, P.J., and Beasley and K. N. Hansen,* JJ.

Per Curiam. The Civil Service Commission denied the request of petitioner, David L. Knowles, a post community service officer with the Michigan State Police, for reclassification. On January 4, 1982, the circuit court reversed in part. From this holding, respondents, Civil Service Commission and Department of Civil Service, appeal as of right.

On December 27, 1977, petitioner filed a position action request with the Department of Civil Service (department), contending that his duties and responsibilities as a post community services officer (Trooper IIB) exceeded the duties and responsibilities of his civil service classification as a trooper and that a proper assessment of his employment factors would result in an upgrading of his position to a State Police Sergeant (IIIB). The department denied petitioner's reclassification request on January 3, 1978, finding that he was properly classified as a State Police Trooper (IIB).

* Circuit judge, sitting on the Court of Appeals by assignment.

On March 9, 1978, petitioner filed an application for a classification redetermination with the department. While awarding petitioner's position as a post community servicies officer additional points, the redetermination officer denied the reclassification request. Thereupon, petitioner appealed the denial and a hearing was held on September 27, 1978, before a technical hearing officer who granted petitioner additional points. This holding left petitioner 10 points below the 270 points required for classification as a State Police Sergeant. On March 31, 1979, the Civil Service Commission (CSC) affirmed the action of the technical hearing officer by denying petitioner's request for leave to appeal.

Pursuant to GCR 1963, 706.3 and MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.,* petitioner appealed to the circuit court. In his petition for review, petitioner alleged that: (1) the department failed to comply with its own position description for a Sergeant IIIB rank and that it did not follow the definitions contained in its Guide to Using the Law Enforcement Factors (benchmark system), (2) he was denied a fair hearing on his reclassification request because the hearing officer incorrectly applied the benchmark factors in consideration of the request, and (3) the decisions of the hearing officer and the CSC were against the great weight of the evidence.

Petitioner specifically appealed from the CSC evaluation of four of his classification factors: Factor I: Nature and Extent of Knowledge; Factor II: Difficulty of Work; Factor III: Responsibility; and Factor IV: Personal Relationships. These factors are subdivided into elements which provide definitions and point values. The circuit court upheld the CSC ratings on three of the factors, but it

ruled that the CSC's "8L" rating on Factor IIIa (responsibility), which embodies two components, (1) impact and purpose of work, and (2) nature of work assignments, was not supported by competent, material, and substantial evidence on the whole record. The circuit court concluded that petitioner was entitled to a "9M" rating on that factor. This rating increase provided petitioner with sufficient points for reclassification as a State Police Sergeant.

In his application for a classification redetermination with the department, petitioner asserted that his factor IIIa "8L" rating should be modified to "9M" for the following reasons:

"Grid Element 8 certainly applies to a road trooper, but the PCSO function goes beyond that in that in many cases there are no standard or established law enforcement procedures and guidelines, as brought out in #16 and #21 of my position description.

"The Post Commander solves unusual, difficult or complex problems; however, the PCSO is given the authority to gather Uniform Crime Reporting information, interpret the statistics and then report to the Post Commander. I also receive input from my resource committees, analyze this information, and report to the Post Commander with suggestions as to allocating patrols and utilizing the committee's resources. I have utilized resources of the community and other police agencies to the point of actually stopping a crime problem.

"Even though specifications for Trooper IIB say that a trooper will give public relations programs and educate the public, my job goes beyond in that not only do I do the above but I also allocate those people and their resources for use in a particular area. Giving programs only comprises a very small percentage of my time.

"The PCSO is not consistent with other specialties performed by the trooper in that in the case of vehicle safety inspection, dog handlers, divers and emergency

services, they have no unusual, difficult or complex problems involving human and material resources. Allocating the community and other professionals as well as their resources to meet the needs of the department is the key to the difference. The PCSO is delegated the authority to act on behalf of the Post Commander without direct supervision; therefore, the PCSO is given the responsibility of using the community and its resources to meet the Post Commander's obligation as a command officer."

In denying plaintiff's request in regard to the foregoing factor, the redetermination officer found:

"Factor IIIa:     Assigned:          8-L
                  Appealed:          9-M
                  Redetermined:      8-L

"Degree 9 is applied to positions where the purpose of work is to direct and supervise the diverse elements of a general law enforcement program activity (e.g., the shift commander) or to resolve involved and intricate cases and situations (e.g., the Crime Laboratory Specialist), where decisions would impact on police officer positions being supervised in the unit. The subject position does not meet either of these criterion and grid element 9 is, therefore, inappropriate.

"Element 8 is proper for the subject position: the purpose of work is to apply standard or established law enforcement procedures and guidelines to individual cases, persons or situations and make decisions to properly dispose of the complaint, case or situation.

"Grid element M is assigned to positions with responsibility for solving unusual, difficult or complex problems pertaining to the allocation of human and material. This element applies to positions that are responsible for determining where, when, and how subordinates and resources will be utilized. This factor is applied to post commanders and other supervisory positions. The incumbent does not have these types of responsibilities and, therefore, degree M is not proper for the subject position.

"The subject position receives and independently handles law enforcement assignments. This is consistent with grid element L."

The circuit court awarded petitioner a "9" rating on the impact and purpose of work component of Factor IIIa on the basis that petitioner's work directly involved supervision. Instead of applying "supervision" to the direction of people, the court construed "supervision" to apply to direction and supervision of programs. Similarly, the trial court awarded petitioner an "M" rating on the nature of work assignments component predicated upon petitioner's wide discretion in approaching and solving problems.

On appeal, respondents contend that the circuit court erred in reversing the CSC holding on the Factor IIIa ranking because there was competent, material, and substantial evidence on the record to support a finding that petitioner merited an "8L" rating. Respondents specifically assert that the circuit court: (1) failed to give deference to the reasonable conclusions drawn by the hearing officer and the CSC, (2) disregarded the established definitions of the rating factors, and (3) applied its own interpretation of the Factor IIIa elements.

In reviewing the holding of a CSC hearing officer, an appellate court will affirm as long as the ruling is not contrary to law and is supported by competent, material, and substantial evidence on the entire record.[1] Where the administrative decision is supported by the foregoing evidentiary standard, a reviewing court should not substitute its opinion for that of an administrative agency

[1] *Viculin v Dep't of Civil Service,* 386 Mich 375, 392; 192 NW2d 449 (1971); Const 1963, art 6, § 28; *Parnis v Civil Service Comm,* 79 Mich App 625, 628; 262 NW2d 883 (1977).

even if the court might have reached a different result had it been in the position of the agency.[2]

In the Michigan Department of Civil Service Guide to Using the Law Enforcement Factors (benchmark system), the responsibility factor, IIIa, is defined:

"*Factor IIIa:*

"This factor, and the one which follows, measure the relative responsibility of different positions by examining four of the major elements which contribute to overall levels of responsibility.

"*Impact and Purpose of Work*

"In the Law Enforcement Service, the purpose of assigned work ranges from handling individual criminal cases or complaints on a case-by-case basis to directing and coordinating major programs in a law enforcement organization. An examination of the impact of decisions and the general purpose of work permits a ranking of positions and classes within this range.

"Degree 8: 'The purpose of work is to apply standard or established law enforcement procedures and guidelines to individual cases, persons or situations and make decisions to properly dispose of the complaint, case, or situation.'

"This element is used to describe those positions which handle individual cases on a case-by-case basis where decisions have impact on the case being handled at the moment (*e.g.,* State Police Trooper).

"Degree 9: 'The purpose of work is to direct and supervise the diverse elements of a general law enforcement program activity, or resolve involved and intricate cases and situations, by applying generally accepted methods, procedures and policies of the department and the law enforcement profession. Decisions may affect implementation of policies and procedures within a small program unit.'

"Degree 9 describes positions responsible for supervision of a variety of different activities simultaneously,

---

[2] *Murphy v Oakland County Dep't of Health,* 95 Mich App 337, 339-340; 290 NW2d 139 (1980).

or carrying a caseload of several complex criminal investigations, where decisions would impact on police officer positions being supervised in the unit. Impact on department programs is greater than in 8 since positions affect the work products of others *(e.g.,* shift supervisor of State Police Troopers, Post Commanders).
\* \* \*

"*Nature of Assignments*

"This element assesses the relative responsibility of positions as it is affected by the complexity of problems handled.

"Degree K: 'Receives and carries out routine and clear-cut assignments; unexpected problems or unusual circumstances are referred to the supervisor or a specialist.'

"This grid element best describes the beginning and developing levels within the law enforcement occupations.

"Degree L: 'Receives and independently handles a full range of law enforcement assignments on a day-to-day basis. Generally considered qualified to engage in any of the normal activities associated with the responsibilities of the unit. May refer unusual problems to supervisor or problem area specialist.'

"This element describes the journeyman and shift supervisor level law enforcement officer and similar positions operating independently in the majority of the unit areas of work.

"Degree M: 'In addition to handling day-to-day law enforcement activities, also solves unusual, difficult or complex problems pertaining to the allocation of human and material resources.'

"Describes the advanced technical specialist and/or lower level command positions handling projects or problems which are unusual, highly complex, sensitive, or controversial in nature, and generally beyond what the journeyman officer, shift supervisor or journeyman specialist would be expected to handle."

We note that petitioner's immediate supervisor, Lt. Francis Pronger, submitted a summary of the

general nature of petitioner's duties to the department:

"26. Describe the function of the unit. According to Official Order 77 the Post Community Services Officer is to coordinate and implement departmental programs regarding problem youth and crime prevention while under the supervision of his post commander. He receives some direction and program planning through the District Coordinator and Community Services staff in Lansing. However many of his projects are without precedence and requires therefore, his proceeding independently utilizing his own initiative and creativeness in problem solving.

"27. Describe the function of the position (summary statement of tasks performed). 1. Direct and coordinate Community Services activity in the post area. 2. Monitor delinquent youth activity and provide information to the Post Commander and Post personnel. 3. Direct crime prevention activities in the post area. 4. Provide In-Service Training to Post personnel. 5. Provides technical expertise to the community and post personnel. 6. Coordinate LEMS activities in the 5 county area between all departments and the UCR Section.

"28. Indicate any exceptions or additions to the statements of the employee. The use of the word supervision in items 16, 17, 17a, 21 and 24 I do not accept as supervision of personnel, but rather his description of coordinating and implementing programs.

"Item 18: Under 'A' assignments are received from the Post Commander and by direct contact with the employee from individuals and agencies."

As delineated by his immediate supervisor, Lt. Pronger, petitioner's responsibilities involve the direction and planning of programs, particularly youth and crime programs. He receives direction from the District Coordinator and the Community Services staff. Notwithstanding the expertise, independent thinking, and innovativeness that peti-

tioner exhibits in his capacity as a post community services officer, the supervision that he provides relates to the coordination and implementation of programs, rather than the direction of personnel. We conclude that in order for petitioner's position as a post community services officer to warrant a "9" rating on the impact and purpose of work component and an "M" rating on the nature of assignments components, he must supervise other unit members.

In our view, the findings of the hearing officer were supported by competent, material, and substantial evidence on the entire record and were not contrary to law. They should not have been set aside by the circuit court. The circuit court holding is hereby reversed, and the decision of the Civil Service Commission is reinstated.

Reversed.