TRAVERSE OIL COMPANY v CHAIRMAN, NATURAL
RESOURCES COMMISSION

GREAT LAKES NIAGARAN v DEPARTMENT OF NATURAL
RESOURCES

Docket Nos. 81927, 81928. Submitted January 14, 1986, at Lansing.
Decided August 4, 1986.

Traverse Oil Company filed a petition with the Supervisor of
Wells, Department of Natural Resources, requesting the com-
pulsory pooling of oil and gas interests and allocation of pro-
duction in an eighty-acre tract in Bear Lake Township, Manis-
tee County. Seventy acres of the oil and gas leasehold working
interests in the eighty-acre parcel were owned by Traverse Oil,
6.2941 acres were owned by Great Lakes Niagaran, and 3.7059
acres was owned by Northern Michigan Exploration Company
(NOMECO). NOMECO agreed to the pooling arrangement proposed
by Traverse Oil, but Great Lakes Niagaran objected and an-
swered Traverse Oil's petition, asserting that the drilling and
production unit should be the east half of the eighty-acre
parcel, or forty acres. After the DNR issued drilling permits,
Traverse Oil drilled a well known as Hilliard 1-26 on the east
half of the eighty-acre parcel. The well was later abandoned
and a new well, Hilliard 1-26A, was drilled. Hilliard 1-26A
proved to be a productive well with a production capability of
five hundred barrels of oil per day. The Supervisor of Wells
subsequently issued an order creating a forty-acre production
unit, assessing a two hundred percent penalty cost against
Great Lakes Niagaran for its percentage of the drilling costs,
and determining the working interest percentage of all parties.
The Natural Resources Commission, upon Traverse Oil's appeal
and Great Lakes Niagaran's cross-appeal, affirmed the supervi-
sor's order. Both Traverse Oil and Great Lakes Niagaran
petitioned the Ingham Circuit Court for review. The circuit

---

REFERENCES

Am Jur 2d, Administrative Law §§ 148-152, 351-353, 359-364, 553 et
seq.

Am Jur 2d, Gas and Oil §§ 164 et seq.

See also the annotations in the Index to Annotations under Gas and
Oil.

court, Robert Holmes Bell, J., consolidated their petitions and partially reversed the determination of the Natural Resources Commission and remanded the case to the commission for further proceedings. Traverse Oil and Great Lakes Niagaran appealed as of right from the circuit court's order. *Held:*

1. The Supervisor of Wells did not err in allocating production on the basis of surface acreage after finding that the pool substantially lay under the forty-acre unit.

2. The supervisor was not divested of jurisdiction to compel the pooling of the parties' oil and gas interests because the supervisor did not secure a recommendation from the advisory board before he issued the order. While the applicable statute expressly requires the supervisor to confer with and receive a recommendation from the board prior to compelling pooling, in the particular factual setting presented in this case, a strict reading of the statute would countervail the overriding policy of the statutory scheme.

3. Traverse Oil was adequately notified of the full nature of the proceedings before the supervisor, including the possibility that a drilling unit smaller than eighty acres might be ordered by the supervisor. Furthermore, Traverse Oil failed to apply to the supervisor, pursuant to a provision of the Administrative Procedures Act, for a more definite statement of the issues once Great Lakes Niagaran's pleadings and the prehearing conferences made Great Lakes Niagaran's position clear.

4. Traverse Oil's assertion that, in the history of production from the Northern Michigan Niagaran Reef Trend, it is the only entity whose petitioned-for drilling unit has been subject to proof of the appropriateness of the unit's size was not supported by the record.

5. The supervisor's decision that a forty-acre portion of the eighty-acre parcel was the correct production unit was supported by competent, material and substantial evidence on the whole record.

6. The supervisor did not err in accepting a document entitled "Proposal for Decision," which he indicated that he would not rely upon in making a decision. An administrative body is presumed to have performed its duties in accordance with the law and is presumed to have conducted its responsibilities with regularity.

7. The circuit court did not err in remanding the case to the supervisor for a redetermination of Great Lakes Niagaran's share of actual costs attributable to the Hilliard 1-26 and 1-26A wells. The supervisor's determination was partially based on costs which were estimated at the time, but actual cost figures

were available by the time the dispute reached the circuit court.

8. The circuit court correctly determined that the supervisor lacked authority to impose a two hundred percent penalty on Great Lakes Niagaran. Further, assuming that the imposition of a penalty is a valid exercise of the supervisor's authority under the circumstances of this case, imposition of a penalty was improper.

9. The Court of Appeals, having ruled that the supervisor did not err when he determined that the appropriate size of the production unit was forty acres and not eighty acres, rejected the following claims which were all based on an assertion that the production unit should have been the entire eighty-acre parcel: (1) that Great Lakes Niagaran's production share should only be 7.8675 percent equal to its share of the surface acreage of the drilling unit in proportion to the entire eighty acres, and (2) that the supervisor's order fosters waste because another well will have to be drilled in the western half of the eighty-acre parcel.

Affirmed.

1. GAS AND OIL — DRILLING UNITS — POOLING — ALLOCATION OF PRODUCTION.

The Supervisor of Wells is vested by statute with the power to compel pooling of oil and gas interests for the harvesting of energy resources; pooling of such interests is designed to prevent waste by avoiding the drilling of unnecessary wells; compulsory pooling is appropriate in any case where the size or shape of separately owned tracts, because of well-spacing requirements, tends to deprive the owners of such tracts of the opportunity to recover or receive their just and equitable share of the oil or gas (MCL 319.13; MSA 13.139[13]).

2. GAS AND OIL — DRILLING UNITS — POOLING — SUPERVISOR OF WELLS — ADMINISTRATIVE LAW — STATUTES — IMPLIED POWERS.

The general rule that the powers of administrative bodies do not exceed those expressly conferred upon them by statute or constitution is necessarily qualified by reason and practicality; therefore, while a statute expressly requires the Supervisor of Wells to confer with and receive a recommendation from the advisory board prior to compelling the pooling of oil and gas interests into one drilling unit, the Supervisor of Wells' power to compel pooling is necessarily implied where the advisory board fails to act or make a recommendation when consulted

by the Supervisor of Wells regarding a petition by a holder of oil and gas interests for pooling (MCL 319.13; MSA 13.139[13]).

3. ADMINISTRATIVE LAW — CONSTITUTIONAL LAW — DUE PROCESS.

Due process and the Administrative Procedures Act require that a party in a contested case be given timely and adequate notice detailing the reasons for a proposed administrative action (MCL 24.271; MSA 3.560[171]).

4. ADMINISTRATIVE LAW — JUDICIAL REVIEW.

Judicial review of a final determination of an administrative agency under the Administrative Procedures Act is limited to the record; great deference should be given to the findings of an administrative hearing officer, particularly where administrative expertise influences a choice between two reasonably differing views.

*J. Andrew Domagalski,* for Traverse Oil Company.

*John J. Lynch,* for Great Lakes Niagaran.

Before: GRIBBS, P.J., and D. E. HOLBROOK, JR., and T. ROUMELL,* JJ.

GRIBBS, J. On May 4, 1983, the Chairman of the Natural Resources Commission issued a final determination which adopted the opinion and order of the Assistant Supervisor of Wells of the Department of Natural Resources (Order No. [A]14-8-81) as its final decision. On November 16, 1984, the Ingham Circuit Court issued an opinion and order of remand in these consolidated cases which affirmed in part and reversed in part the determination of the Natural Resources Commission and remanded the case to the commission for further proceedings. In Case No. 81927, petitioner-cross appellee Traverse Oil Company appeals as of right from that order; in Case No. 81928, petitioner-cross appellant Great Lakes Niagaran appeals as of right from that order. We affirm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

On June 19, 1981, appellant Traverse Oil Company filed a petition with the Supervisor of Wells of the DNR requesting the compulsory pooling of oil and gas interests in an eighty-acre tract in Bear Lake Township, Manistee County, Michigan. Traverse owned seventy acres of the oil and gas leasehold working interests in the eighty-acre parcel, cross-appellant Great Lakes Niagaran owned 6.2941 acres of the oil and gas leasehold working interests in the parcel, and Northern Michigan Exploration Company (NOMECO) owned 3.7059 acres of the oil and gas leasehold working interests in the parcel. NOMECO agreed to the pooling arrangement proposed by Traverse, but Great Lakes objected to it and answered Traverse's petition, asserting that the drilling and production unit should be the east half of the eighty-acre parcel, or forty acres.

In 1981, the DNR issued drilling permits to Traverse and a well known as Hilliard 1-26 was drilled on the east half of the eighty-acre parcel. That well was abandoned and redrilled at a different angle. The new well, Hilliard 1-26A, proved to be a prolific producer of oil, capable of producing up to five hundred barrels of oil per day.

After testimony was taken, Order No. (A)14-8-81 was issued by the supervisor. That order created a forty-acre production unit, assessed a two hundred percent penalty cost against Great Lakes for its percentage of the drilling costs, and determined the working interest percentage of all parties. The Natural Resources Commission issued a final determination which affirmed the order of the supervisor.

First, we consider the issue raised on cross-appeal. The supervisor allocated production on the basis of surface acreage, pursuant to Special Order No. 1-73. Great Lakes argues that the supervisor

abused his discretion because he did not allocate the costs and benefits of the Hilliard 1-26A well based upon the actual pool or reservoir underlying the property. We disagree.

In *Manufacturers Nat'l Bank of Detroit v Dep't of Natural Resources,* 420 Mich 128; 362 NW2d 572 (1984), the Supreme Court noted:

> The essence of this case is plaintiffs' claim that when the drilling unit was expanded to 240 acres, barren land was included within the unit, transferring some of plaintiffs' ⅛ royalty interest to the owners of barren land. Had this transfer occurred at the direction of the Supervisor of Wells, we might have to agree with plaintiffs that the action violated the statutes of this state. Michigan is an ownership-in-place state. That is, a surface owner owns the oil and gas beneath his land. *Attorney General v Pere Marquette R Co,* 263 Mich 431; 248 NW 860 (1933); *Quinn v Pere Marquette R Co,* 256 Mich 143; 239 NW 376 (1931). MCL 319.13; MSA 13.139(13) provides that when the Supervisor of Wells pools separate ownership interests within a drilling unit and allocates production to those lands he must do so on "terms and conditions that are just and reasonable," giving each landowner the "opportunity to recover or receive his just and equitable share of the oil or gas." An order of the supervisor allocating production to barren lands might not meet such a standard. [420 Mich 141-142.]

In this case, however, the supervisor did not allocate production to barren lands. In his opinion and order, the supervisor noted:

> I find that the only pooling that is just and reasonable is into a 40-acre unit. Since the reef and zone of production substantially underlie the unit, the only fair allocation is on a surface acreage basis within the unit.

* * *

Based on the Findings of Fact, *supra,* I conclude as a matter of law that compulsory pooling is necessary to prevent waste and the drilling of unnecessary wells. I further conclude that the appropriate spacing and production unit is the SE ¼ NE ¼ Section 26. This unit provides for all parties to receive their fair and equitable share of the reservoir. Such spacing is necessary to encompass the maximum area to be economically and efficiently drained by one well. Although the precise parameters of the reservoir cannot be ascertained, it appears to substantially underlay the unit and sharing in the proceeds on a surface acreage basis is deemed fair and equitable.

Since the supervisor found that the pool did substantially underlie the unit, he did not allocate production to barren lands. On the facts of this case, allocation of production on the basis of surface acreage was not error.

Next, we turn to the arguments raised on appeal by appellant Traverse. Traverse first argues that Order No. (A)14-8-81 is void, because the Supervisor of Wells did not secure a recommendation from the advisory board before he issued that order. MCL 319.13; MSA 13.139(13) provides, in pertinent part:

The pooling of properties or parts thereof shall be permitted, and, if not agreed upon, *the supervisor after conference with and recommendations by the board,* may require such pooling in any case when and to the extent that the smallness or shape of a separately owned tract or tracts would, under the enforcement of a uniform spacing plan or proration or drilling unit, otherwise deprive or tend to deprive the owner of such tract of the opportunity to recover or receive his just and equitable share of the oil or gas and gas energy in the pool. [Emphasis added.]

MCL 319.13; MSA 13.139(13) is the statutory authority which vests in the supervisor the power to compel pooling of oil and gas interests for the harvesting of energy resources. Pooling of interests is designed to prevent waste by preventing the drilling of unnecessary wells. Compulsory pooling is appropriate in any case where the size or shape of separately owned tracts, because of well-spacing requirements, tends to deprive the owners of such tracts of the opportunity to recover or receive their just and equitable shares of the oil or gas, MCL 319.13; MSA 13.139(13).

An agency has no inherent power; any authority it has must come from the Legislature. *Pharris v Secretary of State,* 117 Mich App 202, 204; 323 NW2d 652 (1982).

In *Turner v General Motors Corp,* 70 Mich App 532, 543-544; 246 NW2d 631 (1976), modified in *McAvoy v H B Sherman Co,* 401 Mich 419; 258 NW2d 414 (1977), we noted:

> Administrative bodies are inherently limited in their powers, being creatures of statute or constitution. Their powers generally do not exceed those expressly conferred upon them. But this rule is necessarily qualified by reason and practicality. Typically entrusted with the administration of complex programs, administrative bodies cannot properly function if burdened with inflexible procedure. Administrative authority thus extends beyond that expressly granted to that necessarily implied.
>
> "In determining whether a board or commission has a certain power, the authority given should be liberally construed in light of the purposes for which it was created and that which is incidentally necessary to a full exposition of the legislative intent should be upheld as being germane to the law. *Coffman v State Board of Examiners in Optometry,* 331 Mich 582, 590; 50 NW2d 322 (1951)."

The statute expressly requires the supervisor to confer with and receive a recommendation from the board prior to compelling pooling. Under the strictest construction, that language might appear to render any pooling order void as without authority unless a board recommendation had been made. However, we believe that in the particular factual setting presented in this case, a strict reading of the statute countervails the overriding policy of the statutory scheme.

The function of the Supervisor of Wells is to prevent waste in oil and gas drilling. *Manufacturers Nat'l Bank of Detroit v Dep't of Natural Resources, supra.* MCL 319.3(1); MSA 13.139(3)(1). The Supervisor of Wells act created the advisory board. The advisory board is a panel of eight persons, six of whom are required to be representatives of the Michigan oil and gas industry, and its duty is to consult with and advise the supervisor and the commission. MCL 319.3; MSA 13.139(3).

In this case, the supervisor conferred twice with the board but the board declined to make a recommendation. Under the construction urged by Traverse, the supervisor was then powerless to compel pooling even though Traverse concedes that pooling was appropriate. The Legislature has declared that the act be liberally construed to serve its intended purposes, MCL 319.1; MSA 13.139(1). We conclude that the board's failure to make a recommendation did not abrogate the supervisor's power to order pooling. The supervisor's authority to do so, on these facts, was necessarily implied. The circuit court did not err in holding that the supervisor was not divested of jurisdiction because the board twice failed to issue a recommendation upon request.

Appellant's second argument is that the supervi-

sor undertook to change spacing with respect to the reservoir involved in this proceeding without following the requirements imposed by rudimentary due process, because he did not notify appellant that spacing would be considered at the hearings held on Traverse Oil Company's petition. We disagree.

Spacing rules regulate the minimum distance between wells, as may be necessary to conform to a uniform well-spacing pattern. See MCL 319.13; MSA 13.139(13). A drilling unit is the maximum area which may be efficiently and economically drained by one well, MCL 319.13; MSA 13.139(13).

Due process and the Administrative Procedures Act require that a party in a contested case be given timely and adequate notice detailing the reasons for the proposed administrative action, *Rochester Community Schools Bd of Ed v State Bd of Ed,* 104 Mich App 569, 580; 305 NW2d 541 (1981).

The Administrative Procedures Act, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.,* satisfies rudimentary due process demands. MCL 24.271; MSA 3.560(171) provides, in pertinent part:

(1) The parties in a contested case shall be given an opportunity for a hearing without undue delay.

(2) The parties shall be given a reasonable notice of the hearing, which notice shall include:

(a) A statement of the date, hour, place, and nature of the hearing. Unless otherwise specified in the notice the hearing shall be held at the principal office of the agency.

(b) A statement of the legal authority and jurisdiction under which the hearing is to be held.

(c) A reference to the particular sections of the statutes and rules involved.

(d) A short and plain statement of the matters asserted. If the agency or other party is unable to

state the matters in detail at the time the notice is given, the initial notice may state the issues involved. Thereafter on application the agency or other party shall furnish a more definite and detailed statement on the issues.

The thrust of Traverse's argument is that it was not properly notified that the supervisor would consider modification of the eighty-acre drilling unit requirement when it heard Traverse's petition for compulsory pooling. The notice of hearing, dated July 24, 1981, was issued in response to Traverse's petition and prior to Great Lakes' answer in which Great Lakes contended that the eighty-acre parcel was inappropriate because the parcel was too large. The notice provided in pertinent part:

The hearing is for the purpose of hearing evidence and testimony pertaining to the need or desirability of issuing an order in the matter of the petition of Traverse Oil Company, Grandview Plaza, Traverse City, Michigan 49684, to require the compulsory pooling of all parcels and interests in a drilling unit consisting of the south half (S ½) of the northeast quarter (NE ¼) of Section 26, T.23N., R.15W., Bear Lake Township, Manistee County.

The petitioner requests an order for compulsory pooling to include certain interests in the proposed drilling unit as described above. Petitioner states that they have been unable to secure a pooling agreement of all interests within the proposed unit to form an 80-acre drilling unit as required by the rules.

Any party of interest may be heard at the hearing at said time and place. Upon the evidence and testimony submitted, and after conference with and recommendation by the Advisory Board, the Supervisor of Wells will enter such order as may be just and proper under the facts and the applicable law.

Subsequent to Great Lakes' answer, two prehearing conferences were held and Traverse and Great Lakes exchanged exhibits. Throughout the ensuing days of testimony, counsel for Traverse did not express surprise or object to the relevancy of Great Lakes' evidence regarding the appropriateness of a forty-acre drilling unit. It appears that Traverse was aware that the appropriateness of Great Lakes' asserted unit would be considered.

However, what Traverse apparently contends is that without specific notice that he might do so, the supervisor could not actually act upon his finding that the forty-acre unit was the appropriate drilling unit. If that were true, it would follow that, when the supervisor determined that the petitioned-for eighty-acre unit was inappropriate, his only option was to flatly deny the petition for compulsory pooling.

We conclude that Traverse was adequately notified of the full nature of the proceedings, including the possibility that a drilling unit smaller than the petitioned-for eighty acres might be ordered. The notice specifically advised Traverse that based upon the evidence submitted, the supervisor would "enter such order as may be just and proper under the facts and the applicable law." The notice language echoes the mandate of MCL 319.13; MSA 13.139(13) that compulsory pooling is required only when and to the extent that it is necessary to prevent waste.

We also note that Traverse failed to apply to the supervisor, as provided in MCL 24.271(2)(d); MSA 3.560(171)(2)(d), for a more definite statement of the issues once Great Lakes' pleadings and the prehearing conferences made clear Great Lakes' position. We conclude that Traverse was adequately notified of the nature of the proceedings, and decline to reverse on this ground.

Third, appellant argues that the supervisor erred because, for the first time in the history of production from the Northern Michigan Niagaran Reef Trend, he required justification of the appropriateness of an eighty-acre unit in the reservoir penetrated by the Hilliard 1-26A well.

Traverse's invitation to this Court to review every file and record of the DNR, to find that this is the only instance in which an eighty-acre unit was not automatically determined to be appropriate, is improper. This Court's review of the supervisor's decision is limited to the information contained in the administrative record, *Smith v Crime Victims Compensation Board,* 130 Mich App 625, 628; 344 NW2d 23 (1983). Nothing in the record here supports Traverse's factual assertion that it is the only entity whose petitioned-for drilling unit has been subject to proof of the appropriateness of the unit's size. We note that in *Manufacturers Nat'l Bank of Detroit, supra,* pp 131-137, the supervisor found appropriate and ordered pooling of a 240-acre unit. Traverse cites no law or principle that requires every unit in an area to be of uniform size. This issue is not a ground for reversal.

Fourth, appellant argues that the Supervisor of Wells "ignored" its evidence. Administrative decisions must be supported by competent, material and substantial evidence on the whole record, as required by MCL 24.306(1)(d); MSA 3.560(206)(1)(d). Great deference should be given to the findings of an administrative hearing officer, *Campbell v Marquette Prison Warden,* 119 Mich App 377, 385; 326 NW2d 516 (1982), particularly where administrative expertise influences a choice between two reasonably differing views, *Sutherby v Gobles Bd of Ed (After Remand),* 132 Mich App 579, 588-589; 348 NW2d 277 (1984), lv den 422 Mich 910 (1985).

In this case, the supervisor did not ignore the evidence offered by appellant; rather, he gave less weight to it than he gave to the other evidence presented. This was not improper. We have reviewed the record and agree with the circuit court's conclusion that the supervisor's decision that the forty-acre portion of the eighty-acre parcel was the correct production unit was supported by competent, material and substantial evidence on the whole record. We decline to substitute our opinion for that of the supervisor. See *Knowles v Civil Service Comm,* 126 Mich App 112, 117-118; 337 NW2d 247 (1983).

Fifth, appellant argues that the supervisor erroneously relied on a document entitled "Proposal for Decision," which was not evidence, in reaching his decision. This contention must be rejected. An administrative body is presumed to have performed its duties in accordance with the law and is presumed to have conducted its responsibilities with regularity. See *Benton Twp v Berrien Co,* 570 F2d 114, 119 (CA 6, 1978). The supervisor accepted the document for filing but indicated that he would not consider it to be evidence. That decision was not error.

Sixth, appellant contends that the trial court erred in reversing both the supervisor's findings on the costs of drilling and completion of the wells and his imposition of a two hundred percent penalty. We conclude that the trial court's decision to reverse the supervisor on those issues was not error.

Both Traverse and Great Lakes appealed the supervisor's findings of costs at the circuit court level. It appears that the supervisor's determination of costs was based in part upon actual costs and in part upon estimated costs. Apparently, by the time the circuit court rendered its decision, the

actual costs of the Hilliard wells were known. The circuit court concluded that, since actual costs were known, Great Lakes' proportionate share should be recalculated by the supervisor based upon actual rather than estimated costs. On these particular facts, where the costs submitted to the supervisor were merely estimates and the actual cost figures were available to the circuit court, we conclude that the circuit court did not err in remanding the case to the supervisor for a redetermination of Great Lakes' share of actual costs attributable to the Hilliard 1-26 and 1-26A wells.

The parties also disputed the supervisor's imposition of a two hundred percent penalty upon Great Lakes. The circuit court concluded that the supervisor had no authority to impose the penalty in this case, because the procedure outlined in 1979 AC, R 299.1205 for the imposition of a penalty was not followed. We agree with the circuit court's conclusion.

First, we note that there is no explicit statutory authority for the imposition of a penalty when the supervisor grants a petition for compulsory pooling. Traverse asserts that the penalty power is found in MCL 319.13; MSA 13.139(13), in the phrase "all orders requiring such pooling shall be upon terms and conditions that are just and reasonable." Traverse argues that since a penalty is necessary to fairly allocate the risk of a nonproductive well among those who benefit from a successful well, the statutory language suffices to vest penalty authority in the supervisor. Apparently, the DNR agrees with this interpretation, as 1979 AC, R 299.1205 provides in part:

(5) Following a hearing on a petition for an order to pool, after thorough consideration of the evidence and testimony submitted, and after con-

ference with and receipt of recommendations by the advisory board, the supervisor shall rule that pooling is not necessary to prevent waste or shall enter his order pooling the separately owned tracts and interests within the drilling unit. Such pooling order shall authorize one of the owners within the affected unit to drill the well thereon and provide that the well shall be commenced within 90 days or the pooling order shall be null and void as to all parties and interests. The order shall set forth the terms and conditions under which each of the owners may share in the working interest production from the well if it is productable. The order shall provide for conditions under which each owner who has not voluntarily agreed to pool may share in the working interest production or be compensated for his working interest within the drilling unit, to wit:

(a) Pay to the party authorized to drill the well his proportionate share of the cost of drilling, completing, and equipping the well, or give bond for the payment of such share of such cost promptly upon completion, whether as a producer or a dry hole; or

(b) Await the outcome of the drilling of the well and, if it be completed as a producer, allow the driller of said well to take out of the nonparticipating party's share of the cost of drilling, completing and equipping the well, plus such additional per cent of said costs as the supervisor may deem appropriate compensation for the risk of a dry hole, plus the nonparticipating party's share of operating costs.

Assuming, arguendo, that the imposition of a penalty is a valid exercise of the supervisor's authority, under the circumstances of this case imposition of a penalty was improper. 1979 AC, R 299.1205(5) provides that, *after* a petition for compulsory pooling has been granted, a party who has been forced to pool his interests is entitled to select which of two methods he wishes to use to participate in well drilling and completion costs, 1979 AC, R 299.1205(5)(b). Only if the party elects

to await the outcome of drilling is a penalty authorized. Here, however, Traverse drilled the Hilliard 1-26 and 1-26A wells before the petition for compulsory pooling was even heard. Contrary to 1979 AC, R 299.1205, Great Lakes was not afforded the opportunity to participate in the drilling costs and avoid the penalty because the wells were completed before pooling was ordered. Thus, the circuit court did not err when it concluded that the supervisor was not authorized to impose a penalty under these circumstances.

Traverse's seventh argument is that Great Lakes' production share should be only 7.8675 percent, equal to its share of the surface acreage of the drilling unit in proportion to the entire eighty acres. Great Lakes argues that actual productive acreage is less than the forty acres and therefore its share of production should be greater. Essentially, this argument is a reiteration of Traverse's contention that eighty acres, rather than forty acres, was the proper production unit. Since we have concluded that the supervisor did not err by establishing a forty-acre production unit, we must reject this argument.

Eighth, appellant argues that the supervisor's Order No. (A)14-8-81 fosters waste because the evidence clearly shows that another well will have to be drilled in the west forty acres to recover the hydrocarbons lying underneath that parcel, and that it is therefore void. Appellee argues that the supervisor's order does not result in waste.

This issue is another attack on the supervisor's finding that the appropriate drilling unit is the east forty-acre parcel. As noted above, the supervisor's decision to provide for a forty-acre drilling unit was supported by competent, material and substantial evidence on the whole record, and reversal is not required on this ground.

Affirmed.