OLD ORCHARD BRANDS, INC v DEPARTMENT OF
AGRICULTURE

Docket No. 84733. Submitted March 6, 1986, at Lansing. Decided
June 2, 1986. Leave to appeal applied for.

Plaintiffs, Old Orchard Brands, Inc., and R. V. Saur and Sons
Orchards, Inc., brought an action in the Ingham Circuit Court
against the Department of Agriculture and the 63rd Judicial
District Court to enjoin the collection of assessments made by
the Department on behalf of the Michigan Apple Committee.
They also sought a declaratory judgment that the act requiring
the payment of the assessments was either not applicable to
plaintiffs or was unlawful. The Michigan Apple Committee was
established under the Agricultural Commodities Marketing Act
to administer a marketing program the Michigan Apple Grow-
ers initiated and approved by referendum vote. Prior to plain-
tiffs' filing suit, the department brought an action against
plaintiffs to enforce collection of the assessments in the 63rd
Judicial District Court. The circuit court, Jack W. Warren, J.,
granted plaintiffs a declaratory judgment, holding that the
Federal Agricultural Fair Practices Act preempted state regula-
tion. The Department of Agriculture appealed. *Held:*

The Agricultural Commodities Marketing Act was not
preempted by the Federal Agricultural Fair Practices Act.

Reversed.

AGRICULTURE — AGRICULTURAL COMMODITIES MARKETING ACT — AG-
RICULTURAL FAIR PRACTICES ACT.

The Agricultural Commodities Marketing Act was not preempted
by the Federal Agricultural Fair Practices Act (7 USC 2301 *et
seq.;* MCL 290.651 *et seq.;* MSA 12.94[21] *et seq.*).

*H. James Starr,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J.*

REFERENCES

Am Jur 2d, Agriculture §§ 58-64.

See the annotations in the ALR3d/4th Quick Index under Agricul-
ture.

*Caruso,* Solicitor General, and *Charles D. Hackney* and *David W. Silver,* Assistant Attorneys General, for defendant.

Amici Curiae:

*Foster, Swift, Collins & Coey, P.C.* (by *James A. White* and *Michael J. Schmedlen*), for Michigan Farm Bureau and Michigan Milk Producers Association.

*Roccy M. De Francesco* (by *John M. Cannon, Susan W. Wanat* and *Ann Plunkett Sheldon,* of counsel), for Mid-Michigan Legal Foundation.

Before: SHEPHERD, P.J., and M. J. KELLY and R. L. TAHVONEN,* JJ.

SHEPHERD, P.J. Defendant Michigan Department of Agriculture appeals as of right from an order of declaratory judgment entered on February 25, 1985, by the Ingham Circuit Court. The circuit court held that the federal Agricultural Fair Practices Act, 7 USC 2301 *et seq.,* (hereafter the AFPA) preempts Michigan's Agricultural Commodities Marketing Act, MCL 290.651 *et seq.;* MSA 12.94(21) *et seq.* We reverse and hold that the federal act does not preempt the Agriculture Commodities Marketing Act.

The Agricultural Commodities Marketing Act authorizes Michigan producers of agricultural commodities to form marketing programs to promote their products. Such marketing programs may establish advertising and market-development programs, conduct research, disseminate market information, set quality standards, inspect and grade commodities, institute surplus controls, and provide for payment to producers according to estab-

* Circuit judge, sitting on the Court of Appeals by assignment.

lished grades. Finally, under the terms of the statute, a marketing program, if it chooses, may exempt nonparticipating producers. MCL 290.653; MSA 12.94(23).

In 1968, Michigan apple growers initiated and approved by referendum vote a marketing program pusuant to the Agricultural Commodities Marketing Act. The Michigan Apple Committee was formed to administer the program. The committee provides producers with market information and conducts advertising, promotion, publicity, and research programs in accordance with MCL 290.653; MSA 12.94(23). The program is funded by assessments levied against each producer. The apple committee has made no provision to exempt producers who do not wish to participate. However, MCL 290.663; MSA 12.94(33) does provide a procedure for producers to petition the director of the Department of Agriculture to call a vote to terminate the program.

R. V. Saur and Sons Orchards, Inc., an apple processor, and Old Orchard Brands, Inc., an apple grower, refused to pay assessments levied for the 1982-1983 growing season, ending June 30, 1983.[1] In an unrelated proceeding, pursuant to MCL 290.669; MSA 12.94(39), the director of the Department of Agriculture instituted actions against the above parties in the district court, seeking to collect the unpaid assessments plus interest, penalties, and costs. Thereafter, on May 18, 1984, R. V. Saur and Sons Orchards, Inc., and Old Orchards Brands, Inc. (hereinafter plaintiffs) filed the instant action in the circuit court against the Department of Agriculture and the 63rd Judicial District, seeking to enjoin the enforcement action

---

[1] Under the Agricultural Commodities Marketing Act, processors may be required to collect and remit producer assessments. MCL 290.655; MSA 12.94(25).

in the district court and a declaratory judgment that the Agricultural Commodities Marketing Act was not applicable to apples. On July 11, 1984, plaintiffs amended their complaint and alleged that the federal Agricultural Fair Practices Act prohibited mandatory participation in the Michigan Apple Committee program and that the federal act preempted Michigan's Agricultural Commodities Marketing Act. As authority, plaintiffs relied principally upon a June 11, 1984, decision by the United States Supreme Court, *Michigan Canners & Freezers Ass'n, Inc v Agricultural Marketing & Bargaining Bd,* 467 US 461; 104 S Ct 2518; 81 L Ed 2d 399 (1984). Both parties moved for summary judgment. The circuit court agreed with plaintiffs' position and ruled that the AFPA preempted the Agricultural Commodities Marketing Act "to the extent that it allows producers' associations such as the apple committee to fail to provide exemption for nonparticipating producers."

The sole issue before this Court on appeal is whether the federal AFPA preempts Michigan's Agricultural Commodities Marketing Act. The AFPA is a federal agricultural statute that was the object of interpretation by the United States Supreme Court in *Michigan Canners & Freezers Ass'n v Agricultural Marketing & Bargaining Bd, supra.* In that decision, the Supreme Court concluded that the AFPA preempted Michigan's Agricultural Marketing and Bargaining Act, MCL 290.701 *et seq.;* MSA 12.94(101) *et seq.* The latter act established a state administered system by which a majority of the producers of a particular commodity could organize a producers' association and then certify that association as the exclusive bargaining agent for all the producers of that particular commodity in the state. Pursuant to

that authority, the Michigan Agricultural Cooperative Marketing Association, Inc., (hereafter MACMA), was formed and accredited as the sole sales and bargaining representative for all asparagus producers in the state. Thus, a producer who objected to a contract negotiated by MACMA would nevertheless be bound by the terms (including price), be precluded from marketing his produce himself, and be forced to pay fees to the association for the services rendered. The Supreme Court held that the Michigan act was in clear violation of 7 USC 2303(c) because it had the effect of coercing a producer to "enter into [or] maintain . . . a marketing contract with an association of producers or a contract with a handler." 467 US 478. Unlike the Agricultural Marketing and Bargaining Act, the Agriculture Commodities Marketing Act, which is the subject of this appeal, does not empower a producers' association to act as a sales and bargaining agent to producers.

The United States Supreme Court in *Michigan Canners* explained the three ways federal law may preempt state law:

> Federal law may pre-empt state law in any of three ways. First, in enacting the federal law, Congress may explicitly define the extent to which it intends to pre-empt state law. Second, even in the absence of express pre-emptive language, Congress may indicate an intent to occupy an entire field of regulation, in which case the States must leave all regulatory activity in that area to the Federal Government. Finally, if Congress has not displaced state regulation entirely, it may nonetheless pre-empt state law to the extent that the state law actually conflicts with federal law. Such a conflict arises when compliance with both state and federal law is impossible, or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of

Congress." [Citations omitted. 467 US 469.]

The Supreme Court concluded that the AFPA neither contains preemptive language nor reflects a congressional intent to occupy the entire field.[2] *Id.* In fact, the AFPA contains express language eliminating its preemptive effect on existing state law. The fifth section of the AFPA, 7 USC 2305(d), states in part:

> *The provisions of this chapter shall not be construed to change or modify existing State law* nor to deprive the proper State courts of jurisdiction. [Emphasis added.]

The Agricultural Commodities Marketing Act was enacted by 1965 PA 232, effective March 31, 1966. The AFPA was enacted by Pub L 90-288 on April 16, 1968. Since the Agricultural Commodities Marketing Act was "existing State law," the AFPA, by its own terms has no preemptive effect. The trial court's opinion does not mention § 2305(d) and thus fails to explain how its clear import may be ignored. Plaintiffs without elaboration argue that the same argument was made and rejected in *Michigan Canners.* However, § 2305(d) was not a bar to the Supreme Court's decision in *Michigan Canners,* because, as the Supreme Court noted, the Michigan act under scrutiny there, unlike the subject act of this appeal, was enacted *after* the AFPA was enacted.

We conclude that the Agricultural Commodities Marketing Act was "existing State law" and, accordingly, the AFPA, by its clear language, has no

---

[2] The Supreme Court followed the third alternative in holding that the Agricultural Marketing and Bargaining Act was in actual conflict with the AFPA.

preemptive effect. We reverse the contrary declaratory judgment of the circuit court.

Reversed.