FELTON v DEPARTMENT OF SOCIAL SERVICES

Docket No. 91630. Submitted January 6, 1987, at Lansing. Decided July 20, 1987.

Lois Felton was hospitalized from March 4 to March 16, 1983, with chest pains linked to heart problems. In January, 1985, she was hospitalized for seven days. She was rehospitalized for four days on February 4, 1985. On June 12, 1985, a Department of Social Services hearing officer denied her application for Medicaid disability benefits determining that she had not been disabled for a period of twelve months or more. Petitioner appealed and the Lapeer Circuit Court, Martin E. Clements, J., affirmed because (1) the burden of proving her claim of disability was on the petitioner, (2) the hearing officer demonstrated no bias, (3) even though a hearing officer has a greater duty than a circuit judge to develop the record for an unrepresented claimant, the hearing officer in this hearing asked probing questions and gave petitioner a fair, full and complete hearing, and (4) the hearing officer correctly denied petitioner's application based on the medical records he had before him at the time of the hearing. Petitioner appealed.

The Court of Appeals *held*:

1. "Disability" for purposes of Medicaid disability eligibility means the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

2. The sequential considerations of a Medicaid disability claim are: (1) is the claimant currently doing substantial gainful activity; (2) if not, does the claimant have a severe impairment; (3) if so, does the claimant have a listed impairment; (4)

REFERENCES

Am Jur 2d, Social Security and Medicare §§ 219 *et seq.*; 322, 680, 681, 687 *et seq.*; 743 *et seq.*; 972 *et seq.*; 1009-1011, 1030-1032, 1360 *et seq.*

What constitutes "disability" within Federal Social Security Act. 77 ALR2d 641.

if not, does claimant's impairment prevent his doing his former work; and (5) if so, does it prevent claimant's doing other work.

3. The hearing officer erred in his determination that petitioner was able to do other "light" work, since there was no specific determination of whether or not petitioner's previous jobs involved unskilled or semiskilled labor and whether or not these skills were transferrable. Once the issue of petitioner's ability to do other work is decided, the burden of proof is on the respondent to show that the petitioner has the residual capacity for substantial gainful employment. The evidence showed that petitioner could only occasionally lift objects weighing ten pounds while "light work" requires a capacity to lift up to twenty pounds. Further, "light work" presupposes an ability to stand and walk at least six hours in an eight-hour shift, which the evidence showed petitioner could not do.

4. Since there was no evidence indicating whether or not petitioner's skills were transferrable, the Court of Appeals assumed they were not transferrable and thus found petitioner to be disabled.

Reversed.

1. SOCIAL SECURITY — DISABILITY — MEDICAID — CODE OF FEDERAL REGULATIONS.

"Disability" for purposes of Medicaid disability eligibility means the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (42 USC 1382; 20 CFR 404.1505[a], 416.905).

2. SOCIAL SECURITY — DISABILITY — MEDICAID — CODE OF FEDERAL REGULATIONS.

The sequential considerations of a disability claim are: (1) is the claimant currently doing substantial gainful activity; (2) if not, does the claimant have a severe impairment; (3) if so, does the claimant have a listed impairment; (4) if not, does claimant's impairment prevent his doing his former work; and (5) if so, does it prevent claimant's doing other work (20 CFR, Part 404, Subpart P, Appendix 2; 20 CFR 404.1520, 416.920[a], [c]).

3. SOCIAL SECURITY — DISABILITY — MEDICAID — CODE OF FEDERAL REGULATIONS.

The determination of whether a Medicaid disability claimant is prevented from doing other work is made based on claimant's (1) residual function capacity, (2) age, education and work experience, and (3) the kinds of work which exist in significant

numbers in the national economy which the claimant could perform; a determination of number 3 and, ultimately, disability or lack of disability may properly be determined by applying the grid found in 20 CFR, Part 404, Subpart P, Appendix 2 to the evaluation of numbers 1 and 2 (20 CFR Part 404, Subpart P, Appendix 2; 20 CFR 404.1520[f], 416.960).

4. SOCIAL SECURITY — DISABILITY — MEDICAID — CODE OF FEDERAL REGULATIONS — LIGHT WORK.

Light work, for purposes of Medicaid disability, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing or when it involves sitting most of the time with some pushing or pulling of arm or leg controls (20 CFR 404.1567[b]).

5. SOCIAL SECURITY — DISABILITY — MEDICAID — CODE OF FEDERAL REQUIREMENTS — SEDENTARY WORK.

Sedentary work, for purposes of Medicaid disability, involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools and a certain amount of walking or standing may be required (20 CFR 404.1567[a]).

6. SOCIAL SERVICES — APPEAL — UNREPRESENTED CLAIMANT — DUE PROCESS.

A Department of Social Services hearing officer has a duty to develop the record on behalf of an unrepresented claimant in order to provide the claimant due process of law.

*Legal Services of Eastern Michigan* (by *Kathryn Bakich* and *Edward J. Hoost*), for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Michael J. Fraleigh,* Assistant Attorney General, for defendant.

Before: HOOD, P.J., and BEASLEY and L. TOWNSEND,* JJ.

PER CURIAM. This case involves a challenge to

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

the denial of Medicaid disability benefits. Follow-
ing an administrative hearing held on June 5,
1985, a hearing officer upheld the decision of the
Michigan Department of Social Services to deny
petitioner disability benefits. On appeal to Lapeer
Circuit Court, the circuit judge upheld the decision
of the hearing officer. Petitioner now appeals to
this Court as of right. We reverse and order that
DSS pay petitioner Medicaid benefits for hospital
and medical expenses incurred by her from Janu-
ary, 1985, to March, 1985.[1]

At the time of the administrative hearing peti-
tioner was a fifty-three-year-old married woman
with a high school education. Unemployed since
1981, her last job was as a grocery store clerk,
which entailed operating the cash register, stock-
ing groceries and cleaning shelves. She had also
previously worked as a cook in a rest home.

Petitioner was hospitalized from March 4 to
March 16, 1983, with chest pains linked to heart
problems. At the time of discharge, she was diag-
nosed as suffering from an abnormally rapid heart
rate coupled with anxiety, difficulty in breathing
due to narrowing of her bronchial tubes, hyperac-
tivity in her thyroid gland, and extreme potassium
depletion in her blood. In January, 1985, petitioner
underwent emergency surgery to remove a num-
ber of old and new blood clots present in both legs.
She was also discovered to be a diabetic. She was
discharged after seven days in the hospital, during
which time she incurred expenses in excess of
$18,000.

Petitioner was readmitted on February 4, 1985,
complaining of chest pains. She was released four

---

[1] Subsequent to the denial of benefits at issue in this case DSS
awarded petitioner Medicaid benefits retroactive to March, 1985.
Therefore, only benefits for the January, 1985, to March, 1985, period
are at issue in this case.

days later with the diagnosis of (1) recent myocardial infarction, (2) coronary insufficiency, (3) diabetes mellitus, and (4) peripheral vascular disease of the arteries and veins in the legs. An April 18, 1985, report from her regular family physician indicated that petitioner was suffering from coronary artery disease, diabetes, peripheral vascular occlusive disease, chronic pulmonary obstruction, and gangrene of two left toes.

On January 22, 1985, petitioner applied for Medicaid disability benefits. Her application was denied throughout the DSS administrative process because it was determined that she had not been disabled for a period of twelve months or more. In a decision issued on June 12, 1985, the hearing officer found petitioner not disabled and denied her application for Medicaid. About the same time petitioner suffered a stroke and again entered the hospital. On appeal to the circuit court, the hearing officer's decision was affirmed because (1) the burden of proving her claim of disability was on the petitioner, (2) the hearing officer demonstrated no bias, (3) even though a hearing officer has a greater duty than a circuit judge to develop the record for an unrepresented claimant, the hearing officer in this hearing asked probing questions and gave petitioner a fair, full and complete hearing, and (4) the hearing officer correctly denied petitioner's application based on the medical records he had before him at the time of the hearing.

We review decisions of the hearing officer in the same manner as the circuit court does, under MCL 24.306; MSA 3.560(206). *General Motors Corp v Bureau of Safety & Regulation,* 133 Mich App 284; 349 NW2d 157 (1984). Petitioner's argument essentially asserts that the decision of the hearing officer is not supported by "competent, material and substantial evidence on the whole record."

MCL 24.306(1)(d); MSA 3.560(206)(1)(d). In *Soto v Director of the Michigan Dep't of Social Services,* 73 Mich App 263, 271; 251 NW2d 292 (1977), this Court explained that

> "[s]ubstantial evidence" means evidence which a reasoning mind would accept as sufficient to support a conclusion. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" of the evidence. [Citations omitted.]

Appellate courts in Michigan give considerable deference to the findings of administrative agencies, especially when it comes to fact finding and weighing of the evidence. *Smith v Mayor of Ecorse,* 81 Mich App 601, 604-605; 265 NW2d 766 (1978).

Medicaid disability benefits are administered by DSS in accordance with Subchapter XIX of the Social Security Act, 42 USC 1396 *et seq.*; see also MCL 400.105 *et seq.*; MSA 16.490(15) *et seq.*, and the agency's program eligibility manual. The determination whether or not a person is disabled for purposes of Medicaid eligibility is governed by 20 CFR 404.1501 *et seq.* Under those regulations, disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 CFR 404.1505(a); 20 CFR 416.905; 42 USC 1382. The Social Security regulations provide for a step-by-step review process for determining disability. 20 CFR 404.1520. If at any step in the review it is determined that the petitioner is or is not disabled, review of the claim ceases. *Mowery v Heck-*

*ler*, 771 F2d 966, 969 (CA 6, 1985); 20 CFR 404.1520(a).

The sequential consideration of a disability claim proceeds as follows:

(1) Is the claimant currently working, i.e., currently doing "substantial gainful activity"? 20 CFR 416.920(a).

(2) If not, does the claimant have a severe impairment, i.e., does the claimant have an impairment which "significantly limits [her] physical or mental ability to do basic work activities"? 20 CFR 416.920(c).

(3) If she does, does claimant have an impairment listed in Appendix 1 to Subpart P of 20 CFR, Part 404, i.e., a "listed impairment," so that the claimant can be found disabled based on the medical evidence alone?

(4) If not, does claimant's impairment prevent her from doing her past relevant work?

(5) If it does, does claimant's impairment prevent her from doing other work? 20 CFR 404.1520.

See *Mowery, supra*, pp 969-970; *Kirk v Secretary of Health & Human Services*, 667 F2d 524, 528 (CA 6, 1981), cert den 461 US 957; 103 S Ct 2428; 77 L Ed 2d 1315 (1983).

Petitioner's chief complaint lies with the fifth step of the hearing officer's analysis. The fifth step of the review process requires the hearing officer to determine whether the claimant can perform other jobs which exist in significant numbers in the national economy. 20 CFR 416.1520, 416.1560 and 416.1561. This determination is based on the claimant's (1) "residual function capacity," defined simply as "what you can still do despite your limitations," 20 CFR 416.945, (2) age, education and work experience, and (3) the kinds of work

which exist in significant numbers in the national economy which the claimant could perform despite her impairments. 20 CFR 404.1520(f) and 20 CFR 416.960.

Once the hearing officer determines the claimant's age, education, previous work experience and her "residual function capacity," these findings are plugged into one of three medical-vocational grids found at 20 CFR, Part 404, Subpart P, Appendix 2, which direct a conclusion of "disabled" or "not disabled." The United States Supreme Court has determined that these medical-vocational guidelines or grids may properly be used as a shortcut method of determining whether or not there are jobs in the national economy which a claimant can perform despite his or her limitations. *Heckler v Campbell,* 461 US 458; 103 S Ct 1952; 76 L Ed 2d 66 (1983). However, federal courts have noted that "only when the findings of fact as to each of the relevant components of the grid 'coincide' with the grid's definitions, do the guidelines direct a conclusion as to disability." *Kirk, supra,* p 528. "[I]f the characteristics of the claimant do not identically match the description in the grid, the grid is only used as a guide to the disability determination." *Id.*

In the instant case, the hearing officer made the following findings as to petitioner's age, education, previous work experience and residual function capacity:

(1) She was fifty-three years old and thus "a person approaching advanced age" as defined in 20 CFR 416.963;

(2) She had a 12th-grade education;

(3) Her previous work required the ability to perform "medium manual labor"; and

(4) She had the ability to meet the physical demands required to perform "light work."

As a result of his determination that petitioner could perform "light work," the hearing officer used Table 2 of Appendix 2, 20 CFR, Part 404, Subpart P, to conclude that petitioner was not disabled. The hearing officer said he relied on Rule 202.1 of Table 2 to make his determination, but there is no such rule in that table. There is a Rule 202.10, but that line on the table coincides with someone who has less education than a high school graduate, and thus would not seem to fit petitioner, whom the hearing officer found to have a 12th-grade education. Respondent suggests that the petitioner's characteristics are found in Rule 202.15 of Table 2, and attributes the hearing officer's citation to a typographical error.

Respondent's suggestion is based on the dubious assumption that petitioner's previous job involved "semi-skilled work" (see definition at 20 CFR 416.968[b]) rather than "unskilled work" (see definition at 20 CFR 416.968[a]) and also the only slightly more credible assumption that these skills were transferrable to jobs in the "light work" category. Even though there is no doubt that the hearing officer in the instant case erred by not making specific findings of whether or not petitioner's previous jobs involved "unskilled" or "semi-skilled" labor and whether or not these skills were transferrable to jobs in the "light work" category, *Richardson v Secretary of Health & Human Services,* 735 F2d 962 (CA 6, 1984), this error made no difference to the disposition of this case as long as the hearing officer was correct in deciding that the petitioner was capable of "light work." However, as will be discussed later, this error by the hearing officer *does* make a difference to the disposition of this case if petitioner was only able to do "sedentary work." Using any one of the lines on Table 2 which characterize a person as "approaching ad-

vanced age" and as a high school graduate or more (Rules 202.13, 202.14 or 202.15), the hearing officer would still have reached the same result. The correctness of the hearing officer's decision thus turns in large part on whether or not he properly concluded that petitioner was capable of performing "light work."

We hold that, based on the evidence presented, the hearing officer was incorrect in deciding that the petitioner was capable of performing "light work." Once a claimant reaches step 5 of the review process, he or she has already established a prima facie case of disability. *Richardson, supra.* At that point the burden is on the government to prove by substantial evidence that the claimant has the residual capacity for substantial gainful employment. *Richardson, supra,* p 964. Specifically, the burden was on the respondent in this case to prove that petitioner had the residual capacity to do "light work." *Id.; Bogard v Heckler,* 763 F2d 361, 363 (CA 8, 1985).

The federal regulations describe "light work" as follows:

> Light work involves lifting no more that 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. [20 CFR 404.1567(b).]

The hearing officer in the instant case found that petitioner had "significant limitations on physical activities involving standing, walking, and lifting more than 10 pounds." This conclusion was substantially supported by the reports of all three examining doctors and by the petitioner's testimony at the administrative hearing itself. However, the hearing officer's conclusion that these factual findings indicated petitioner could do light work was not supported by the evidence. The consensus of the doctors was that at most petitioner could occasionally lift objects weighing up to ten pounds as opposed to the demand of "light work," which require "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR 404.1567(b). In addition, "light work," as used in the Social Security regulations, "presupposes an ability to stand and walk at least 6 hours in an 8-hour work day," *Lawler v Heckler,* 761 F2d 195, 198 (CA 5, 1985), something the doctors here clearly indicated petitioner could not do.

Petitioner's characteristics suggest that she is able to perform only "sedentary work." The regulations describe "sedentary work" as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. [20 CFR 404.1567(a).]

Since petitioner was capable of only "sedentary work," the hearing officer should have used a different grid, namely, Table 1 of 20 CFR, Part

404, Subpart P, Appendix 2. However, even given the fact that petitioner is a person "closely approaching advanced age" and a high school graduate whose status does not provide for direct entry into skilled work, the conclusion of "disabled" or "not disabled" is possible under Rules 201.12, 201.14 and 201.15, depending on whether petitioner's previous work involved "unskilled" or "semi-skilled" labor and whether or not those skills are transferrable to jobs in the "sedentary work" category.

Despite these possible results, we believe Rule 201.12 or Rule 201.14 in Table 1 should have been used and a conclusion of "disabled" reached. This is so because the burden was on respondent to prove that the skills petitioner acquired in her past relevant work were transferrable to "sedentary work." *Richardson, supra,* p 964. Since neither the hearing officer nor the respondent made any showing that petitioner's skills were transferrable to "light" or "sedentary" work, it must be presumed that they were not transferrable and thus respondent has not discharged the burden of proving that petitioner had the residual capacity for substantial gainful employment. *Id.* Whether or not petitioner's previous work entailed "unskilled" or "semi-skilled" work was thus irrelevant since under either Rule 201.12 or Rule 201.14 petitioner must be considered "disabled."

Because we conclude that the decision of the hearing officer that petitioner was not disabled was not supported by competent, material and substantial evidence on the whole record, we need not give extended consideration to petitioner's due process claims. However, we briefly note that the hearing officer did little in the twenty-minute hearing to fully develop the record in petitioner's behalf. The hearing officer has a duty to fully and

fairly develop the record on behalf of an unrepresented claimant, particularly if the claimant is unfamiliar with the hearing procedure. *Collingsworth v Director, Dep't of Social Services,* 146 Mich App 186, 197; 379 NW2d 417 (1985). The hearing officer observed that petitioner had five prescribed medications, but he only elicited the purpose of three of them. Petitioner asserts that further investigation by the hearing officer would have revealed that common side effects of the medicines petitioner was prescribed include headaches, hypotension, increased heart rate, dizziness, flushing, and nausea.

For the foregoing reasons, the decision of the hearing officer, and the decision of the circuit court affirming that decision are reversed. The DSS shall pay petitioner Medicaid benefits for hospital and medical expenses incurred by her from January, 1985, to March, 1985.