DUKESHERER FARMS, INC v DIRECTOR OF THE DEPARTMENT
OF AGRICULTURE

Docket No. 98291. Submitted April 14, 1988, at Grand Rapids. De-
cided July 26, 1988.

Following a February 19, 1982, public hearing, the Director of the
Michigan Department of Agriculture issued findings and a
recommendation that the Michigan cherry promotion develop-
ment program be amended to increase the per ton assessment
against producers to increase the amount of money available
for promotional efforts. The director ordered that a referendum
be held of cherry producers. The first issue addressed by the
referendum concerned the renewal of the marketing program
for cherries established under the Agricultural Commodities
Marketing Act (ACMA). The second issue concerned the pro-
posed increase in the rate of the assessment against cherry
producers. Plaintiffs, Dukesherer Farms, Inc., and Ray Schultz,
contacted the Attorney General claiming that the ballot was
defective and that the director's findings were not in compli-
ance with the Administrative Procedures Act. After being
advised by the Attorney General that there was a possibility
that the ballot could be misunderstood, the director decided to
resubmit a revised ballot to the cherry producers. The original
ballots were sealed when they were returned and the revised
ballots were mailed to the producers. Plaintiffs then brought an
action in the Berrien Circuit Court against defendants, the
Director of the Michigan Department of Agriculture and the
Michigan Cherry Commodity Committee, alleging various viola-
tions of the ACMA. The trial court, William White, J., denied
plaintiffs' motion for a preliminary injunction. After the re-
vised ballots were counted, it was determined that the referen-
dum passed by a large margin. The trial court then determined
that the first ballots should not have been impounded. They

REFERENCES

Am Jur 2d, Administrative Law §§ 610, 612, 620, 621.

Am Jur 2d, Agriculture § 66.

Am Jur 2d, Markets and Marketing §§ 17 *et seq.*

Am Jur 2d, Pleading §§ 309-312.

See the Index to Annotations under Administrative Law; Agricul-
ture; Goods and Merchandise; Markets and Marketing.

were thereafter tabulated and they indicated overwhelming approval for passage of the referendum. Following further hearings and the retirement of the trial judge, the new trial judge, Casper O. Grathwohl, J., issued an order denying plaintiffs' motions for summary disposition and to amend the complaint and granted defendants summary disposition. Plaintiffs appealed.

The Court of Appeals *held:*

1. The trial court properly denied plaintiffs' motion to amend the complaint as such amendment would have been futile.

2. The director properly carried out the referendum by established rules promulgated under the Administrative Procedures Act.

3. The first trial judge erred in determining that the director could not issue a second ballot. There was no error in the procedure followed by the director. The director complied with the ACMA.

4. There was substantial testimony at the hearings to support the findings made by the director.

Affirmed.

1. PLEADING — AMENDMENT OF PLEADINGS.

Leave to amend a complaint shall be freely given when justice so requires; a trial court does not abuse its discretion in refusing to permit an amendment when the amendment would be futile (MCR 2.118[A][2]).

2. AGRICULTURE — AGRICULTURAL COMMODITIES MARKETING ACT — REFERENDUMS.

The Agricultural Commodities Marketing Act governs the conduct of a referendum under the act regarding a proposed commodity marketing program (MCL 290.651 *et seq.;* MSA 12.94[21] *et seq.*).

3. AGRICULTURE — AGRICULTURAL COMMODITIES MARKETING ACT — REFERENDUMS.

The Agricultural Commodities Marketing Act requires the Director of the Michigan Department of Agriculture to issue a recommendation approving or disapproving a proposed commodity marketing program within forty-five days of a public hearing thereon; if the director recommends a particular marketing program, a referendum of affected producers is required within forty-five days of the recommendation; the recommended program goes into effect if more than fifty percent by number of those voting representing more than fifty percent of the volume of the affected commodity produced by those voting

assent; all such marketing programs are subject to a renewal referendum each fifth year of operation (MCL 290.651 *et seq.*; MSA 12.94[21] *et seq.*).

4. ADMINISTRATIVE LAW — APPEAL.

   Administrative decisions are generally affirmed if they are supported by material, competent and substantial evidence on the record as a whole; substantial evidence is such evidence as a reasonable mind would accept as adequate to support the decision; a decision is subject to reversal only where the evidence firmly establishes that the agency has abused its discretion by arbitrary action (Const 1963, art 6, § 28; MCL 24.306[1][d]; MSA 3.560[206][1][d]).

*H. James Starr,* for plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *David W. Silver,* Assistant Attorney General, for defendants.

Before: SHEPHERD, P.J., and SAWYER and K. MACDONALD,* JJ.

PER CURIAM. The Agricultural Commodities Marketing Act (ACMA or Commodities Act), MCL 290.651 *et seq.*; MSA 12.94(21) *et seq.*, authorizes Michigan agricultural commodities producers to form marketing programs to promote their products. Pursuant to the regulations, the producers may establish advertising and market development programs, conduct research, disseminate market information, set quality standards, inspect and grade commodities, institute surplus controls and provide for payment to producers according to established grades. See generally *Old Orchard Brands, Inc v Dep't of Agriculture,* 152 Mich App 274, 275-276; 393 NW2d 608 (1986), lv den 426 Mich 873 (1986). Such programs must be renewed by referendum every five years. MCL 290.671; MSA 12.94(41).

* Circuit judge, sitting on the Court of Appeals by assignment.

The act provides that the Director of the Michigan Department of Agriculture must give notice of a public hearing on a proposed marketing program or proposed amendments to an existing program after receiving a petition signed by the lesser of twenty-five percent or two hundred of the producers of an agricultural commodity. See MCL 290.660(a); MSA 12.94(30)(a). The director is required to make findings and issue a recommendation, based on the hearing record, within forty-five days of the close of the hearing.

The Michigan Cherry Commodity Committee was approved by the requisite number of cherry producers in a referendum conducted in March, 1972. The cherry program was renewed by a referendum in 1977. The instant case involves a challenge to the referendum in 1982 to continue the program and to increase the assessment on cherry production.

Shortly following a February 19, 1982, public hearing, the Director of the Michigan Department of Agriculture issued his findings and recommendation based on evidence presented at the public hearing. The director found that increasing supplies of Michigan cherries are expected in the next few years and that per capita consumption of cherries in the United States has been declining. The director further found that other commodity promotion programs have promotion and advertising budgets far in excess of the promotion budget for Michigan cherries and that the increased cost of the promotional programs have limited the ability of Michigan cherry producers to affect the market. The director further found that nearly one hundred percent of the proposed assessment increases, if passed, would be devoted to increasing promotional efforts. The director recommended that the amendment to the Michigan cherry pro-

motion development program, which would increase per ton assessments against producers, be put to the producers and ordered a referendum held.

The recommended program, or in this case amendment, goes into effect if "more than 50% by number of those voting representing more than 50% of the volume of the affected commodity produced by those voting assent to the proposal." MCL 290.661(1); MSA 12.94(31)(1).

In 1982 there were two issues confronting cherry producers. The first was the standard fifth year renewal of the program. The second question concerned a proposed increase in the rate of the cherry assessment. A referendum was conducted from April 5 to April 19, 1982. During the week of April 5, 1982, plaintiffs' counsel contacted the Attorney General and objected to the referendum claiming the ballot was defective and the findings issued by the director were not in compliance with the Administrative Procedures Act, MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*

The alleged ballot defect was that voting was to be based upon volume of cherries "sold," as opposed to "produced." Although not concurring with plaintiffs that the ballots were facially defective, the Attorney General agreed that there was a possibility for the ballot to be misunderstood by the electorate.

Subsequent to being so advised by the Attorney General, the Director of the Michigan Department of Agriculture decided to resubmit the question to cherry producers in a revised ballot. The returned April ballots were sealed and, on May 5, 1982, a revised ballot was mailed to all cherry producers. The second ballot asked for volume in number of tons "produced."

Plaintiffs commenced this action on May 5, 1982,

alleging various violations of the ACMA in the conduct of the referendum. The court denied a preliminary injunction. The May ballots were counted and the cherry referendum passed among those submitting ballots by a very large margin.

On June 13, 1983, the trial court issued its opinion, finding that the public hearing, findings of fact and conclusions of law issued by the Director of the Michigan Department of Agriculture were supported by the administrative record and in concert with the Administrative Procedures Act. With respect to the ballots, the trial court ruled that the department lacked authority to impound the April, 1982, ballots and ordered that the first ballots be tabulated and the results submitted to the court.

Thereafter, the April, 1982, ballots were tabulated and the director reported to the trial court in August, 1983, results indicating an overwhelming approval of continuing the cherry program and increasing the assessment.

In December, 1983, another hearing was held in Berrien Circuit Court. Plaintiffs sought reconsideration of the court's prior ruling on the adequacy of the director's findings and recommendations. Plaintiffs further sought a determination on the validity of the two ballots.

The trial court issued an opinion some fifteen months later, in February, 1985, which concluded that plaintiffs were entitled to have the court determine the validity of the ballots. Plaintiffs were denied other relief.

Defendants next moved to have the trial judge disqualified for bias. That motion was eventually declared moot due to his retirement. In November, 1986, plaintiffs moved to amend their complaint and for summary disposition. The new trial judge denied plaintiffs' motion for summary disposition,

denied plaintiffs' motion to amend the complaint, and granted summary disposition in favor of defendants on the basis of MCR 2.116(I)(2), which allows the court to grant summary disposition in favor of the opposing party where that party is so entitled.

I

Plaintiffs first argue on appeal that their motion to amend the complaint was improperly denied in the absence of prejudice to defendants. The court rule states that leave to amend "shall be freely given" when justice so requires. MCR 2.118(A)(2). Nevertheless, the trial court does not abuse its discretion in refusing to permit an amendment when the amendment would be futile. *Ben P Fyke & Sons v Gunter Co,* 390 Mich 649, 656; 213 NW2d 134 (1973); *Ray v Taft,* 125 Mich App 314, 324; 336 NW2d 469 (1983). The additional paragraphs plaintiffs seek to add to the complaint were already pled in the original complaint. The new allegations add nothing new although, in some cases, plaintiffs have gone into slightly greater detail in their allegations. To add allegations which merely restate allegations already made is futile. We affirm the trial court's denial of plaintiffs' motion to amend.

II

Plaintiffs next argue that the director failed to properly carry out the referendum by established rules promulgated under the Administrative Procedures Act and, more specifically, the APA's definition of "rule" contained in § 7 of the APA and, therefore, that the referendum was void. We note initially that the provisions of the Commodities

Act have been deemed sufficiently detailed and specific to pass constitutional due process muster. See *Dukesherer Farms, Inc v Director of the Dep't of Agriculture (After Remand),* 405 Mich 1, 29-30; 273 NW2d 877 (1979). Plaintiffs initially argue that there is no definition of "volume"; that the director's use of "ton" as the volume measurement is not guided by a department rule complying with the APA. Section 12 of the Commodities Act provides that "[t]he director shall establish procedures for determination of volume for the conduct of referendums." We believe the issue of how "volume" is measured is one of arithmetical importance only. Plaintiffs do not dispute that tonnage is the standard business unit of measurement for cherry production. We do not see error in the director's failure to adopt a rule on volume.

Plaintiffs next argue that the director erred in permitting producers to vote on the basis of their highest tonnage produced in any one of three years, 1979, 1980 and 1981. Plaintiffs argue that such a decision was a policy of the director which fell within the definition of "rule" under the APA and therefore required compliance with that act prior to its adoption.

Defendants concede that the statute does not have a specific voting provision, but argue that the voting requirement is grounded in the Commodities Act. Section 12 specifically provides that a "producer" is entitled to one vote. "Producer" is defined in § 2 of the act:

(b) "Producer" means a person engaged in the business of producing, or causing to be produced for any market, an agricultural commodity in quantity beyond that person's own family use, and having a value at first point of sale of more than $800.00 for the agricultural commodity in any 1

growing and marketing season within the last 3 years.

Defendants claim the voting requirement flows from the definition.

We believe the voting standard is a reasonable interpretation of the statutory language although not the only interpretation possible. Plaintiffs do not allege any arbitrary action on the part of the director such as changing the standard from year to year in order to favor one group or another. Plaintiffs do not argue that the standard was adopted to favor one group or another. The standard has been consistently used in past referendums. Furthermore, plaintiffs cannot point to any way in which they have been damaged by the method used. Because the voting standard is grounded in the statute, we believe no rule was necessary.

Plaintiffs also argue that the referendum was conducted without rules promulgated under the APA. Plaintiffs questioned the method of determining who should be sent ballots, verification and disqualification procedures, and the contents of the ballot itself. The act itself governs the conduct of the referendum, including the necessary percentage to pass a proposal, MCL 290.661; MSA 12.94(31), and who is entitled to vote, see § 12 of the act, and includes requisite definitions, see § 2 of the act. There apparently is no mystery as to the director's disqualification standards as they would seemingly apply to any election: ballots not signed, ballots not voted, and ballots failing to indicate volume produced so that the ballot can be given appropriate weight.

Plaintiffs next complain that the act requires rules and regulations for the marketing program and disbursement of funds. In fact, there are such rules. See 1979 AC, R 285.301.1—285.301.40.

III

Plaintiffs next argue that the ACMA provides for voting procedures on the basis of volume "produced." The first ballot was mislabeled and was marked tons "sold." Since the amount produced could well have been substantially different from the amount of cherries sold, plaintiffs argue that the first ballot was in violation of the statute. Therefore, that ballot should not have been used as a basis for continuation of the program and the increased assessment levied against plaintiffs. Plaintiffs also argue that the second ballot was sent out beyond the forty-five-day time limit imposed by the statute and beyond the five-year period in which renewal of the program must take place.

The act requires the director to issue a recommendation approving or disapproving the proposed marketing program within forty-five days of the public hearing. If the director recommends a particular marketing program, a referendum of affected producers is required within forty-five days of the recommendation. The recommended program goes into effect if "more than 50% by number of those voting representing more than 50% of the volume of the affected commodity produced by those voting assent to the proposal." MCL 290.661(1); MSA 12.94(31)(1). All marketing programs under the act are subject to a renewal referendum each fifth year of operation. MCL 290.671; MSA 12.94(41). In this case, the initial ballot was conducted from April 5 through April 19, 1982. Plaintiffs' counsel contacted the Attorney General and indicated the alleged problem with the ballot language. The Attorney General apparently advised the director that the ballot could be misleading. The director then ordered a second

referendum, held in May, 1982. Both votes resulted in overwhelming approval of the renewal and new proposed assessment.

The trial court initially concluded that the director was without statutory power to order the second ballot. A subsequent trial court opinion indicated that the plaintiffs were entitled to have a court determine the validity of the ballots. Summary judgment was granted defendants on the issue in a subsequent hearing by a successor judge.

We initially conclude that the first trial judge was in error when he stated that the director could not issue a second ballot. When a potentially misleading error was pointed out to the director, he immediately moved to send out a subsequent ballot. No prejudicial delay was involved. The corrected ballots were sent to the identical voters. We find no error in the procedure followed by the director.

Although the subsequent balloting fell outside the forty-five-day time limit, the initial ballot was within the time limit. We believe the director's correction of the error amounted to substantial compliance with the forty-five-day limit. Furthermore, nothing in the statute provides that the program must be renewed within five years of the date of the previous renewal. The statute only requires that marketing programs are subject to a renewal referendum *each fifth year* of operation. MCL 290.671; MSA 12.94(41). We believe the director has complied with the statute here.,

IV

Finally, plaintiffs challenge the findings of fact made by the director from the public hearing and published in his recommendation. Generally, ad-

ministrative decisions are to be affirmed if they are supported by material, competent and substantial evidence on the record as a whole. Const 1963, art 6, § 28; MCL 24.306(1)(d); MSA 3.560(206)(1)(d). Substantial evidence is such evidence as a "reasonable mind" would accept as adequate to support the decision. *Parnis v Civil Service Comm,* 79 Mich App 625, 629-630; 262 NW2d 883 (1977). An administrative decision is subject to reversal by the courts of this state only where the evidence firmly establishes that the agency has abused its discretion by arbitrary action. *Crider v Michigan,* 110 Mich App 702, 716; 313 NW2d 367 (1981), lv den 414 Mich 953 (1982).

As pointed out by the trial court, eighteen of the nineteen persons attending the public hearing spoke in favor of the proposed assessment increase and that the proposal be submitted on a referendum vote. There was substantial testimony to support each of the findings made by the director. We therefore find that the decision was supported by the record and affirm the trial court's ruling.

Affirmed.