## DEPARTMENT OF CIVIL RIGHTS ex rel JOHNSON v SILVER DOLLAR CAFE

Docket No. 125790. Submitted February 20, 1991, at Lansing. Decided April 1, 1991, at 9:05 A.M. Leave to appeal sought.

Mary H. Johnson filed a complaint with the Department of Civil Rights, alleging sexual harassment by her employer, Paul Anson. After the department issued a charge against Paul and Margaret Anson and their restaurant, the Silver Dollar Cafe, a hearing referee concluded that Johnson had been sexually harassed by Paul Anson and that she was entitled to back pay and $30,000 in compensatory damages. The Civil Rights Commission adopted the referee's recommendations. The defendants appealed to the Hillsdale Circuit Court, Harvey W. Moes, J., which affirmed the finding of sexual harassment and the award of back pay, but reduced the amount of compensatory damages to $4,515 in the belief that it represented a disguised award of punitive damages. The Department of Civil Rights appealed in behalf of Johnson.

The Court of Appeals *held:*

The circuit court erred in substituting its judgment concerning the extent of Johnson's mental and emotional damages for that of the referee. A circuit court is permitted to substitute its findings of fact only when it has determined that a referee's findings were not supported by competent, material, and substantial evidence. The circuit court clearly erred in determining that the amount of the compensatory damages awarded was not supported by substantial evidence and that it was a disguise for a punitive award, requiring reinstatement of the commission's award of compensatory damages.

Reversed and remanded.

Murphy, J., concurring, stated that the circuit court's standard of review should have been whether the hearing referee's findings were supported by competent, material, and substantial evidence on the record and whether the referee acted

REFERENCES

Am Jur 2d, Administrative Law §§ 553 *et seq.*

See the Index to Annotations under Administrative Law; Appeal and Error.

arbitrarily or without authority. On the basis of the record and the correct standard, it was error for the circuit court to reverse the referee's findings and conclusions.

1. Civil Rights — Civil Rights Commission — Appeal to Circuit Court — Review De Novo.

A person who is aggrieved by a final decision of the Civil Rights Commission and who appeals to the circuit court is entitled to a review de novo on the basis of the record, not on the basis of an entirely new evidentiary hearing; the circuit court is permitted to substitute its findings of fact only when it has determined that the referee's findings were not supported by competent, material, and substantial evidence (MCL 37.2606[1]; MSA 3.548[606][1]).

2. Civil Rights — Civil Rights Commission — Appeal — Standard of Review.

A judgment of a circuit court on appeal from an order of the Civil Rights Commission is a final judgment which may be appealed to the Court of Appeals as of right; the clearly erroneous standard governs the review of the circuit court's decision.

3. Administrative Law — Appeal — Presumption of Validity.

A circuit court hearing an appeal from an order or decision of an administrative body should assume that the administrative body acted properly and that its orders and decisions are valid and reasonable.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Mary Louise Pridmore,* Assistant Attorney General, for the plaintiff.

*Kurt Berggren,* for the defendants.

Before: Sawyer, P.J., and Hood and Murphy, JJ.

Hood, J. In November 1984, Mary Johnson filed a sexual harassment complaint with the Michigan Department of Civil Rights. Following its investigation, the department issued a charge against defendants, Paul and Margaret Anson, and their restaurant, the Silver Dollar Cafe. A formal hearing on the charge was conducted before a Civil Rights Commission (CRC) referee. Following the hearing, the referee issued his findings of fact and

recommendations. The referee concluded that Johnson had been sexually harassed by defendant Paul Anson during her employment at the cafe and that defendants were liable for her damages. The referee's recommendations included an order of back pay and an award of $30,000 in compensatory damages.

The CRC subsequently issued an order adopting the referee's recommendations. Defendants appealed to the Hillsdale Circuit Court. The circuit court affirmed the referee's finding of sexual harassment and the award of back pay. However, the court believed that the referee's award of compensatory damages was so excessive that it was an obvious disguise for an award of punitive damages. The court reached this conclusion despite the referee's repeated acknowledgment and emphasis that punitive damages were not permitted and that the award was to compensate Johnson for the extreme humiliation and distress suffered as a result of Paul Anson's outrageous behavior. Consequently, the circuit court reduced the amount of compensatory damages awarded Johnson from $30,000 to $4,515. Through the Department of Civil Rights, Johnson appeals as of right. We reverse.

The appeal before us challenges only the propriety of the circuit court's reduction of the damage award in light of its duty as a reviewing court. Since the court's decision rested primarily on its review of the record and its conclusions regarding the testimony and the referee's "hidden" intentions, we believe that a brief overview of the underlying facts is appropriate.

Several years before working at the Silver Dollar Cafe, Johnson had developed a close friendship with defendant Margaret Anson. In 1981, Margaret Anson asked Johnson to work as a waitress at her cafe. Johnson was initially reluctant because

of health problems[1] and because of concern about a prior sexual advance made by Paul Anson. Johnson nevertheless accepted Margaret's offer after Margaret assured her that Paul would not bother her at work.

During her first two months of employment, Johnson had no adverse encounters with Paul Anson. Unfortunately, her hair loss from her disease caused her to become self-conscious about her appearance, and as a result she left her job at the cafe.

In 1983, Johnson was again invited to resume her job at the cafe, and eventually she returned to a part-time waitress position in July. Johnson's sister-in-law also worked at the cafe, and she and various patrons corroborated Johnson's accusations of sexual harassment.

Shortly after her return to work, Johnson became the focus of Paul Anson's repeated offensive sexual remarks and conduct. Paul would usually be in the restaurant only on Friday nights and Saturdays, although he occasionally also arrived at times during the week. While there, Anson would continually make motions and gestures of a sexual nature toward Johnson, such as licking and puckering his lips, grabbing her buttocks, rubbing his body against hers, and "undressing" her with his eyes. He would frequently make reference to the size of her breasts and what he would do with her if she gave him a chance. Anson had propositioned Johnson by offering her money in exchange for various sexual favors, and indicated that she could have "another job" if she complied with his requests. In addition, Anson would make disparaging remarks about Johnson's invalid husband, and

---

[1] At the time, Johnson suffered from alopecia areata, a disease which causes the hair to fall out. As the disease progressed, Johnson began to wear a wig.

boasted that if he "had her" she would doubtless leave her husband.

These repeated comments and gestures often reduced Johnson to tears. Although she asked him numerous times to leave her alone, Paul often found someway to be near her or touch her, even in the presence of his wife, Margaret. Johnson had become so upset over this treatment that at one point she threatened him with a knife to keep him away. Later, several patrons noticed that Johnson was visibly upset and extremely nervous.

Patrons confirmed that whenever Paul Anson was around, Johnson would become distraught and her demeanor would change drastically. Johnson would frequently ask one of the patrons to stay with her as she closed the restaurant because she had observed Anson waiting in his car in the parking lot.

In October 1984, Margaret Anson told Johnson that Paul was concerned that she had been underreporting her tips. Johnson stated that she had been reporting her tips consistent with Margaret's previous instructions. Before this time no mention had been made regarding her reporting of tips. Nevertheless, at Paul's instigation, Johnson was fired the next day.

The hearing referee carefully detailed his findings regarding Johnson's sexual discrimination claims and the witnesses' credibility. He specifically found Paul Anson's denials and explanations regarding the allegations to be totally incredible. This finding was supported by references to various statements made by Anson and the referee's conclusion that they were logically inconsistent. The referee found that the evidence supported Johnson's claims of a hostile work environment[2]

---

[2] See MCL 37.2103(h)(iii); MSA 3.548(103)(h)(iii).

and of quid pro quo sexual harassment.[3] With respect to damages, the referee found that Johnson sustained lost wages as a result of defendants' unlawful action in the amount of $2,660. The referee also found that the vulgar and intimidating nature of the sexual harassment caused her to suffer mental and emotional distress which were compensable. However, the referee explicitly denied Johnson's request for exemplary damages. The referee then recommended that Johnson be awarded $30,000 for "humiliation, extreme emotional distress, indignities to her person and character, and great mental anguish suffered as a result of [defendants'] unlawful conduct."

On appeal, the circuit court found "nothing, with the exception of the testimony of Mrs. Johnson, to substantiate any type of [compensatory] damages." Consequently, the court believed that the award was, to a large extent, punitive. The court brushed aside the referee's acknowledgment that he could not award punitive damages, believing that such an award must have been "somewhere in the back of his head." Ultimately, it awarded Johnson $4,515 in compensatory damages.

On appeal, plaintiff argues that the circuit court employed an incorrect standard of review when it determined that the award of compensatory damages was excessive. In essence, plaintiff contends that the circuit court's rationale reveals that it substituted its judgment concerning the extent of Johnson's mental and emotional damages for that of the CRC referee. Our review of the record leads us to conclude that plaintiff is correct.

Under § 606(1) of the Civil Rights Act:[4]

---

[3] See MCL 37.2103(h)(i), (ii); MSA 3.548(103)(h)(i), (ii).

[4] MCL 37.2101 et seq.; MSA 3.548(101) et seq.

A complainant and a respondent shall have a right of appeal from a final order of the commission, including cease and desist orders and refusals to issue charges, before the circuit court . . . . An appeal before the circuit court shall be reviewed de novo. [MCL 37.2606(1); MSA 3.548(606)(1).]

This standard of review has been interpreted by our Supreme Court to mean a de novo appeal based on the record, not on an entirely new evidentiary hearing. *Walker v Wolverine Fabricating & Mfg Co, Inc,* 425 Mich 586, 615; 391 NW2d 296 (1986). The Court explained that a limited review of a CRC order is authorized:

[T]he circuit court shall review the record produced at the CRC anew, drawing its own inferences and conclusions from that record. The court shall determine whether the CRC's factual findings and legal conclusions are supported by competent, material, and substantial evidence on the whole record, and whether it acted arbitrarily or without authority. [*Id.* p 617.]

As Justice Levin noted in his dissent, this standard of review is confusing and contradictory. *Id.,* pp 623-624. The first sentence states that the review is de novo; however, the second describes the more limited review to determine if the findings are supported by "competent, material, and substantial" evidence. This language is usually associated with the standard of review provided in Const 1963, art 6, § 28 and § 106 of the Administrative Procedures Act.[5] While the review of CRC orders is labeled "de novo," we conclude that the scope of review is qualified by the inclusion of this limiting language. We hold, therefore, that while the circuit court is permitted to draw its own

[5] MCL 24.306(d); MSA 3.560(206)(d).

inferences and conclusions from the record presented, the qualification that it is to determine whether the CRC's factual findings are supported by competent, material, and substantial evidence limits the circuit court's authority to substitute its judgment for that of the CRC referee. In other words, the circuit court is permitted to substitute its findings of fact only when it has determined that the referee's findings were not supported by competent, material, and substantial evidence. The circuit court would not be able to substitute its own findings of fact merely because it disagrees with those reached by the referee. By being precluded from entertaining additional evidence, the circuit court is prevented from trying the case anew. See *Walker, supra,* pp 613-616. This limitation on the court's authority is consistent with the *Walker* Court's rejection of the contention that the circuit court's review is governed by the clearly erroneous standard. *Id.,* p 618.

We believe that this limitation is also consistent with those imposed on an appellate court. A limitation on the circuit court's authority to substitute its judgment for that of the referee, absent a determination that the referee's findings were not supported by competent, material, and substantial evidence, is justified because the referee, and not the circuit court, was present to observe the witnesses and assess their credibility. Accordingly, we conclude that the language typically associated with the review of other administrative decisions was intended by the *Walker* Court to limit the scope of review usually associated with de novo review.

Having clarified the scope of a circuit court's review of a CRC order, we must determine whether the circuit court in this case complied with that standard. We note that a judgment of a circuit

court following an appeal from a CRC order is considered a final one from which a claim of appeal may be filed as of right. *Dixon v Ford Motor Co,* 402 Mich 315, 318-319; 262 NW2d 666 (1978). Our review of the circuit court's decision therefore is governed by the clearly erroneous standard. *Id.,* p 319. Accordingly, in this case we must determine whether the circuit court's conclusions that the compensatory award was not supported by the evidence and that the award was a "disguise" for a punitive award were clearly erroneous. A factual finding is clearly erroneous if, upon review of the entire record, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Tuttle v Dep't of State Hwys,* 397 Mich 44, 46; 243 NW2d 244 (1976).

We have reviewed the entire record and are persuaded that the findings of the circuit court were clearly erroneous. Initially, we note that in finding that the award of compensatory damages was excessive, the circuit court, by its rationale, implicitly found that the award was not supported by competent, material, and substantial evidence. Specifically, the court found "nothing, with the exception of the testimony of Mrs. Johnson, to substantiate any type of [compensatory] damage." On the basis of the record, we conclude that this finding was clearly in error. Contrary to the trial court's conclusion, the record revealed that several witnesses, in addition to Johnson, testified regarding the extreme change in Johnson's disposition and behavior which would occur upon Paul Anson's arrival at the cafe. Patrons testified that Johnson would become visibly distraught and extremely tense. There was testimony that patrons were requested to stay with Johnson while she finished, because of her fear of Anson, and would

walk her to her car, because he was waiting in the parking lot. In addition, Johnson's husband corroborated the mental and emotional distress that she experienced, which manifested itself in nightmares and sleeplessness. We conclude that this evidence supported a finding that "substantial evidence"[6] was presented regarding the issue of mental and emotional distress. Accordingly, we conclude that the circuit court's negative finding in this regard and the substitution of its determination of damages were clearly erroneous.

Plaintiff also contends that the circuit court erred in finding that the $30,000 award of compensatory damages was in fact an award of punitive damages. We agree.

As indicated above, the circuit court reduced the award of compensatory damages on the basis of its conclusion that there was no evidence to support the award. This finding led to the circuit court's belief that the award, being excessive, evidenced the referee's hidden desire to award punitive damages despite his stated recognition that such an award was not permitted. Because we have previously determined that the circuit court's finding that the award was not supported by the evidence was clearly erroneous, we reject its conclusion that the award was punitive in nature. Our review of the record leads us to conclude that the circuit court erred in assuming that the referee was merely paying lip service to the prohibition of punitive damages and awarded such damages in disguise. Such an assumption was unwarranted

[6] "Substantial evidence" has been called that which a reasonable mind would accept as adequate to support a decision. *Dukesherer Farms, Inc v Director of the Dep't of Agriculture,* 172 Mich App 524, 535; 432 NW2d 721 (1988). Substantial evidence is more than a scintilla, but less than a preponderance. *Felton v Dep't of Social Services,* 161 Mich App 690, 695; 411 NW2d 829 (1987).

here, particularly because the circuit court should assume that the administrative body acted properly and that its orders and decisions are valid and reasonable. See *Traverse Oil Co v Chairman, Natural Resources Comm,* 153 Mich App 679, 692; 396 NW2d 498 (1986); *Battjes Builders v Kent Co Drain Comm'r,* 15 Mich App 618, 623; 167 NW2d 123 (1969).

For the reasons expressed above, we conclude that the circuit court clearly erred in finding that the CRC's award of $30,000 in compensatory damages was not supported by the evidence and in substituting its judgment for that of the referee. The record did not support the circuit court's assumption that the award was so excessive that it must have been a disguise for an award of punitive damages. Accordingly, we reverse the opinion and order of the circuit court, and order that the CRC's award of compensatory damages be fully reinstated.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

SAWYER, P.J., concurred.

MURPHY, J. *(concurring).* I concur with the majority that the circuit court's standard of review was whether the CRC referee's findings were supported by competent, material, and substantial evidence on the record and whether the referee acted arbitrarily or without authority. I would reinstate the CRC's award of $30,000 in compensatory damages because, measured by this record and the above standard of review, it was error for the circuit court to reverse the CRC referee's findings and conclusions.